UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY PTAK,

          Plaintiff,      Civil Action No. 19-12609
                                  Honorable Gershwin A. Drain
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 11, 13]

Plaintiff Tony Ptak ("Ptak") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**    **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Ptak is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, Ptak's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN**

**PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.   REPORT

### A.   Background

Ptak was 40 years old at the time of his application date of February 21, 2017,[1] and at 6'3" tall weighed approximately 170 pounds during the relevant time period. (Tr. 62-63, 227, 232). He did not complete high school but earned a GED. (Tr. 64, 233). Previously, he worked as a landscaper and machine operator, but he stopped working because of his medical conditions in 2008. (Tr. 65, 232-34). He now alleges disability primarily as a result of back and neck pain, carpal tunnel syndrome, chronic obstructive pulmonary disease ("COPD"), and anxiety/post-traumatic stress disorder ("PTSD"). (Tr. 67-70, 232).

After Ptak's application for SSI was denied at the initial level (Tr. 125-28), he timely requested an administrative hearing, which was held on March 20, 2018, before ALJ Crystal White-Simmons (Tr. 59-86). Ptak, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert ("VE") William Kiger. (*Id.*). On July 20, 2018, the ALJ issued a written decision finding that Ptak is not disabled under the Act. (Tr. 15-31). On July 22, 2019, the Appeals Council denied review. (Tr. 1-5). Ptak

---

[1] Ptak filed prior applications for SSI. On February 9, 2016, ALJ David Neumann issued a written decision finding that Ptak was not disabled under the Act. (Tr. 90-100). Thus, Ptak has amended his alleged onset date to February 10, 2016. (Tr. 15).

2

timely filed for judicial review of the final decision on September 5, 2019.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Ptak's medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

3

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Ptak is not disabled under the Act. At Step One, the ALJ found that Ptak has not engaged in substantial gainful activity since February 21, 2017 (the application date). (Tr. 17). At Step Two, the ALJ found that he has the severe impairments of lumbar disc protrusion, degenerative disc disease of the cervical spine, left shoulder osteoarthritis, COPD, and mild bilateral carpal tunnel syndrome. (*Id.*). The ALJ specifically found Ptak's mental impairments of generalized anxiety disorder and PTSD non-severe. (Tr. 18). At Step Three, the ALJ found that Ptak's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 19).

The ALJ then assessed Ptak's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing,

4

stooping, kneeling, crouching, and crawling; frequent fingering; occasional overhead reaching; no exposure to extreme cold; and occasional exposure to environmental irritants. (Tr. 20).

At Step Four, the ALJ found that Ptak is unable to perform any of his past relevant work. (Tr. 29). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Ptak is capable of performing the jobs of cashier (500,000 jobs nationally), routing clerk (41,000 jobs), and cafeteria attendant (60,000 jobs). (Tr. 30). As a result, the ALJ concluded that Ptak is not disabled under the Act. (Tr. 31).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In his motion for summary judgment, Ptak argues that the ALJ erred in giving "minimal weight" to the opinion of his treating psychiatrist, Junaid Ghadai, M.D., and, as a result, in finding that his mental impairments are non-severe and do not warrant any RFC limitations.[2] (ECF No. 11 at 6-13). The treating physician rule "mandate[s] that the ALJ

---

[2] Because the Court finds error in the ALJ's evaluation of Ptak's mental impairments, it will focus its discussion on medical evidence pertaining to those impairments. On remand, however, the ALJ should fully consider the medical evidence pertaining to Ptak's physical impairments, including the February 28, 2018 recommendation of his treating physician, Glenn Minster, M.D., that he

6

'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, on January 15, 2018, Dr. Ghadai completed a "Mental Impairment Questionnaire," in which he listed Ptak's diagnoses as generalized anxiety disorder, PTSD, and chronic mood disorder, and characterized his prognosis as fair, with treatment. (Tr. 502). Dr. Ghadai opined that Ptak would likely be absent from work more than four days a month because of his impairments, and would be off task at least 20% of the time in an 8-hour workday because of attention and concentration deficits, an inability to sustain an ordinary routine without supervision, an inability to deal with normal work stress, and

---

undergo an anterior cervical decompression and fusion "due to [his] increasingly severe symptoms and failure of all nonoperative management[.]" (Tr. 534).

7

distraction from working in proximity to others. (*Id.*). Dr. Ghadai further opined that Ptak could not handle minimal changes in the work routine or accept instructions and respond appropriately to supervisors. (*Id.*). When asked to list the clinical findings supporting his opinions, Dr. Ghadai explained that Ptak has a chronic mood disorder, with periods of intense depressed mood; feelings of helplessness, hopelessness, and worthlessness; frequent mood swings; poor concentration; and impaired frustration tolerance. (Tr. 503). Dr. Ghadai further noted that Ptak experiences periods of intense anxiety with severe restlessness and agitation. (*Id.*).

The ALJ considered the Mental Impairment Questionnaire completed by Dr. Ghadai, stating as follows:

> In considering the opinion of the claimant's treating psychiatrist, I note that a checklist-type form was employed, which is weak evidence at best. In addition, the opinion is vague and sympathetic in nature. A treating source's checkmarks on an MSS form may be discounted if they are contradicted by objective medical evidence in the record. In the instant case, examining and/or treating sources noted that the claimant's recent memory, judgment, and insight were within normal limits, and Mr. Ptak exhibited normal and relaxed mood and affect, and normal behavior [(Tr. 282, 417, 423, 427, 429, 523)]. Moreover, the claimant consistently denied anxiety and depressed mood, and admitted that his anxiety was well managed on medication [(Tr. 282, 302, 305, 352, 357, 362)]. Given these factors, I ascribe minimal weight to the foregoing opinion.

(Tr. 26). Ptak now argues that the ALJ erred in discounting the opinion[3] of Dr. Ghadai –

---

[3] The Commissioner argues that a treating physician's opinion is only entitled to deference when it is a medical *opinion* and that statements about how often a claimant might miss work are not medical opinions. (ECF No. 13 at 9 (citing cases)). While this is true, Dr. Ghadai expressed several opinions in addition to that regarding Ptak's attendance – such as the fact that Ptak would be unable to sustain an ordinary routine without supervision, would be distracted when working in proximity to others, could not handle minimal changes in the work routine, and could not accept instructions and respond appropriately to supervisors. (Tr. 502). Thus, even if part of Dr. Ghadai's

8

a specialist, who treated him over a period of years and whose treatment notes are consistent with his opinion – based primarily on an alleged inconsistency with notations of other providers (who were primarily treating Ptak's physical impairments). Under the circumstances, the Court finds merit to Ptak's argument.

To begin with, the ALJ discounted Dr. Ghadai's opinion because "a checklist-type form was employed, which is weak evidence at best." (Tr. 26). This was not a "good" reason for giving the opinion little weight. Although Dr. Ghadai provided certain information by merely checking boxes on the form – which can, without more, be a valid reason for discounting the opinion[4] – here, the ALJ failed to note that on the very same form, Dr. Ghadai provided diagnoses supporting his opinions, including generalized anxiety disorder, PTSD, and chronic mood disorder. (Tr. 502). The ALJ also failed to note that on the supposed "checklist-type" form, Dr. Ghadai identified numerous specific clinical findings supporting his opinion, including periods of intense depressed mood; feelings of helplessness, hopelessness, and worthlessness; frequent mood swings; poor concentration; impaired frustration tolerance; and periods of intense anxiety with severe restlessness and agitation. (Tr. 503). Thus, Dr. Ghadai's opinion was not simply "checklist-type" opinion suggested by the ALJ, and it should not have been discounted on

---

opinion is not entitled to deference, the remainder of his opinion still merits substantive consideration.

[4] *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings....") (internal quotations omitted) (citing cases).

9

this basis. *See Dalecke v. Berryhill*, No. 18-11970, 2019 WL 3046559, at *10 (E.D. Mich. June 24, 2019).

Moreover, the ALJ made no mention of the fact that Dr. Ghadai's opinion is consistent with his own treatment notes, which contain "objective medical evidence" of Ptak's mental impairments. In the psychiatric context, objective medical evidence consists of "medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.,* abnormalities of behavior, mood, thought, memory, orientation, development, or perception." *Plummer v. Comm'r of Soc. Sec.*, No. 16-13059, 2017 WL 3821751, at *2 (E.D. Mich. Sept. 1, 2017). Here, throughout all of Ptak's visits in 2016 and 2017, Dr. Ghadai repeatedly made the following findings on mental status examination: agitated behavior; poor eye contact; depressed and/or anxious mood; brief, pressured, and/or hyperverbal speech; constricted or labile affect; and fair or limited insight. (Tr. 322-38, 484-500). Thus, this objective medical evidence – which was not mentioned in the ALJ's opinion – provides support for Dr. Ghadai's opinion.

In addition to ignoring the consistency between Dr. Ghadai's opinion and his treatment notes, the ALJ compounded her error by discounting Dr. Ghadai's opinion as "contradicted by objective medical evidence in the record." (Tr. 26). In pointing out these alleged contradictions, the ALJ cited to certain occasions when providers other than Dr. Ghadai – who were treating Ptak for physical (rather than mental) impairments – observed that his recent memory, judgment, and insight were within normal limits; he exhibited normal and relaxed mood and affect; and he denied anxiety and depression. (Tr. 26 (citing Tr. 282, 352, 357, 362, 417, 423, 427, 429, 523)). Courts have recognized, however, that

"the opinions of physicians who only treat or assess physical impairments should not typically be used to undermine the credibility of a claimant's psychological limitations or to suggest that the claimed impairments are inconsistent with the *psychological* medical evidence of record." *Therrien v. Comm'r of Soc. Sec.*, No. 18-12966, 2019 WL 3202194, at *10 (E.D. Mich. June 28, 2019) (internal quotations omitted) (emphasis in original). This reasoning is particularly applicable here, when one weighs Dr. Ghadai's long-term treatment of Ptak, his expertise in mental health, and the long-term persistent abnormal findings documented in his records against certain "copy-and-paste" observations by doctors who treated Ptak's back and neck pain regarding Ptak's mood and the fact that Ptak did not complain to them about anxiety and depression.

The foregoing makes clear that the ALJ's decision to discount Dr. Ghadai's opinion as "contradicted by objective medical evidence in the record" (Tr. 26) is simply not supported by substantial evidence and is not the product of an even and thorough weighing of the competing evidence in the record. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). For all of these reasons, the Court cannot find that the ALJ's decision to give minimal weight to Dr. Ghadai's opinion, and, as a result, to impose no mental limitations in the RFC, is supported by substantial evidence. On remand, the ALJ should

11

address Dr. Ghadai's treatment records in determining the weight to give his opinion and whether any mental RFC limitations are warranted.

### III. CONCLUSION

For foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 13)** be **DENIED**, Ptak's Motion for Summary Judgment **(ECF No. 11)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: May 14, 2020  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith*

*v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 14, 2020.

                                                                s/Eddrey O. Butts
                                                                EDDREY O. BUTTS
                                                                Case Manager